IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KIRILL and ALEXANDRA
KICHATOV,

              Plaintiffs,

v.

NATIONSTAR MORTGAGE, INC.,
and MORTGAGE ELECTRONIC
REGISTRATION, INC.(MERS),

              Defendants.

3:13-CV-00103-BR

OPINION AND ORDER

KIRILL KICHATOV
ALEXANDRA KICHATOV
10065 S.W. 148th Ave
Beaverton, OR 97007
(503)524-1828

        Plaintiffs, *Pro Se*

DAVID A. WEIBEL
KATIE A. AXTELL
Bishop, White and Marshall, P.S.
720 Olive Way, Suite #1201
Seattle, WA 98101
(206) 622-5306

        Attorneys for Defendants

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendants' Motion (#25) to Dismiss and Plaintiffs' Motion (#2) to Quiet Title. For the reasons that follow, the Court **GRANTS** Defendants' Motion and **DENIES** Plaintiffs' Motion, and **GRANTS** Plaintiff leave to file an amended complaint as explained at the end of this Opinion and Order.

## BACKGROUND

The following facts are taken from the Complaint and documents referenced therein:

On September 20, 2007, Plaintiffs Kirill and Alexsandra Kichatov entered into a Note with Pacific Residential Mortgage, LLC, secured by property located at 10065 S.W. 148th Ave., Beaverton, Oregon. Plaintiffs also entered into a Trust Deed as to that property with Plaintiff as grantor; First American Title Company as Trustee; and Mortgage Electronic Registration System (MERS) solely as nominee for the lender, Pacific Residential Mortgage.

The Trust Deed was recorded in Washington County, Oregon, on September 27, 2007.

At some point, the Note and/or Trust Deed was sold to Defendant Nationstar Mortgage, Inc. Although Plaintiffs do not allege in their Complaint that this transfer occurred, various

other facts alleged in the Complaint suggest the transfer of the Note and/or Trust Deed occurred before Fall 2010.

Plaintiffs allege they sought and applied for a loan modification[1] in Fall 2010.  Plaintiffs allege they returned the application for the loan modification together with the necessary information and were advised their application would take three months to process.

"As time passed," Plaintiffs called to inquire about the status of their loan modification and were advised their application had not yet been processed.  They were asked to resubmit various documents "numerous times."

In Fall 2011 Plaintiffs called "the company's" refinance department and were offered the option to refinance their home.

On October 10, 2011, Nationstar sent Plaintiffs a loan-modification application pursuant to the Making Home Affordable Modification Program (HAMP).  Plaintiffs submitted the HAMP application to Nationstar.

On December 9, 2011, Nationstar sent Plaintiffs a letter in which it approved Plaintiffs for a trial-period plan under HAMP. The letter advised Plaintiffs:

> To accept this offer, you must make new monthly "trial period payments" in place of your normal monthly mortgage payment.

---

[1] Plaintiffs do not identify the entity from which they sought the loan modification.

\* \* \*

    After all trial period payments are timely made
and you have submitted all the required documents,
your mortgage would then be permanently modified.
(Your existing loan and loan requirements remain
in effect and unchanged during the trial period.)
**If each payment is not received by Nationstar
Mortgage LLC in the month in which it is due, this
offer will end and your loan will not be modified
under the Making Home Affordable program.**

\* \* \*

    Once we confirm you are eligible for a Home
Affordable Modification and you make all your
trial period payments on time, we will send you a
modification agreement detailing the terms of the
modified loan.

Decl. of A.J. Loll, Ex. D at 1, 2 (emphasis in original).

    Plaintiffs allege they made their mortgage payments during
the trial period on time and in the amount requested. Plaintiffs
allege throughout the trial period they received statements and
telephone calls advising them that their payments were past due.
Plaintiff spoke with Muthuraj Srinivasan and other Nationstar
"agents" throughout the trial period and informed them that they
were receiving these notices. Plaintiffs were repeatedly advised
not to be concerned about the statements and telephone calls
because Plaintiffs were in the trial period.

    Plaintiffs allege they received a Loan Modification
Agreement on February 9, 2012, signed by Srivisasan, which
Plaintiffs signed, notarized, and sent back to Nationstar.

    On March 1, 2012, Nationstar sent Kirill Kichatov a letter

advising him that Plaintiffs did not meet the HAMP program

eligibility guidelines because:

> You have not documented a financial hardship that
> has reduced your income or increased your
> expenses, thereby impacting your ability to pay
> your mortgage as agreed.
>
> You have sufficient net income to pay your current
> mortgage payment.
>
> You have the ability to pay your current mortgage
> payment using cash reserves or other assets.

Loll Decl., Ex, E at 1.   Nationstar advised Plaintiffs that there

were other possible alternatives available, including a loan

modification, and that Plaintiffs had

> 30 calendar days from the date of this notice to
> contact Nationstar Mortgage to discuss the reason
> for non-approval for a HAMP modification or to
> discuss alternative foreclosure prevention options
> that may be available to you.  Your loan may be
> referred to foreclosure during this time, or any
> pending foreclosure action may continue.  However,
> **no foreclosure sale will be conducted and you will
> not lose your home** during this 30-day period (or
> any longer period required for us to review
> supplemental material you may provide in response
> to this Notice.

Loll Decl., Ex. E at 2 (emphasis in original).

Plaintiffs allege they received a letter on April 2, 2012,

that contained a denial of the loan-modification program.[2]

Plaintiffs allege they received a telephone call from "Brian

from Nationstar" on April 2, 2012, to whom they explained "what

---

[2] Plaintiffs did not provide a copy of the April 2, 2013,
letter.

had transpired in regard to the modification." Brian advised Plaintiffs that "managers" would discuss the case during the week, and Plaintiffs should call a direct number on April 5 or 6, 2012, to find out about the decision on the loan modification.

Plaintiffs allege they attempted to call Brian on both dates, but they were unable to reach him and left voicemails.

Plaintiffs allege on April 9, 2012, they received a "Welcome letter" from Nationstar dated March 31, 2012, in which Plaintiffs were advised Nationstar had received Plaintiffs' "completed documentation."

On May 1, 2012, Plaintiffs wired a mortgage payment to Nationstar and were advised through Nationstar's automated telephone system that Plaintiffs were past due on their mortgage. Plaintiffs allege they attempted to speak to a manager at Nationstar several times on May 1 and 2, 2012, without success. Plaintiffs allege they were told by a Nationstar agent that their "trial is void."

Plaintiffs do not allege they have received any notice of intent by Defendants to foreclose or that any foreclosure or sale of the property has occurred.

On January 18, 2013, Plaintiffs filed a Complaint in this Court against Nationstar and MERS alleging Defendants violated "the unfair and Deceptive Acts and Practices." Compl. at 6. In their prayer for relief, Plaintiffs seek: (1) a declaration that

Defendants are required to show original loan documentation,
proof of legality of ownership . . . to prove legal standing to
foreclose and to show "they abided in following Oregon Real
Estate Laws"; (2) compensatory and punitive damages for "Duress
committed by Defendants by wrongfully committing the threat of
taking Plaintiffs [sic] Property," which "forced Plaintiffs to
cease paying" their mortgage; (3) damages for or possibly a
declaration that Defendants intentionally misrepresented the
facts, "namely to give a Loan Modification, but instead
conspiring to take Plaintiff's [sic] Property"; and (4) damages
for or possibly a declaration of "Defendant's [sic] intentional
unconscionable behavior in creating a contract that was rescinded
and continued to treat Plaintiffs unfairly and dishonestly."

     Also on January 18, 2013, Plaintiffs filed a Motion to Quiet
Title in which they allege "as a result of improper procedures
[by Defendants], the true owner of Plaintiff's [sic] mortgage is
unclear; and as a result; Plaintiffs . . . have been paying
improper entities an excess amount whom question legal standing
to their Property."

     On April 26, 2013, Defendants filed a Motion to Dismiss in
which they move to dismiss Plaintiffs' Complaint and seek an
order releasing the lis pendens recorded by Plaintiffs.

     The Court heard oral argument on the parties' Motions on
June 6, 2013; granted Defendants' Motion to Dismiss; and advised

Plaintiffs that the Court would issue an Opinion and Order setting out the grounds for the decision that the Court announced at oral argument.

## STANDARDS

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550 U.S. at 546). When a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

The pleading standard under Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). *See also* Fed. R. Civ. P. 8(a)(2). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing

*Twombly*, 550 U.S. at 555).  A complaint also does not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.

## DISCUSSION

Defendants moved to dismiss Plaintiffs' Complaint on the grounds that Plaintiffs did not specify a specific state or federal law that they contend Defendants violated.  Even though the bases for Plaintiffs' claims are unclear, Defendants addressed several possible claims that Plaintiffs may have been attempting to bring.  In particular, Defendants asserted: (1) Plaintiffs have not established an actual case or controversy exists, (2) there is not any private right of action under HAMP, (3) Plaintiffs fail to establish any fiduciary duty between Defendants and Plaintiffs, (4) Plaintiffs fail to plead fraud with particularity, and (5) Plaintiffs fail to allege facts sufficient to state claims for violation of the Oregon Unlawful Collection Practices Act and/or the FDCPA.

At oral argument it became apparent that Plaintiffs intended to bring claims for declaratory relief and/or for violation of HAMP and/or for breach of contract related to their loan modifications.  As the Court advised Plaintiffs at oral argument, they have failed to state facts sufficient to establish that there is an actual case or controversy, and, in addition, there

is not any private right of action under HAMP.   Because
Plaintiffs are proceeding *pro se* and because the Court grants
Plaintiffs leave to amend their Complaint, the Court sets out a
more complete analysis of the grounds on which it granted
Defendants' Motion to Dismiss and denied Plaintiffs' Motion to
Quiet Title as follows.

## I.   Declaratory Relief

The court's power to grant declaratory relief is limited to
"a case of actual controversy."   28 U.S.C. § 2201.   *See also Md.
Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 272-73 (1941);
*Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir.
2005).   "[T]he question in each case is whether the facts
alleged, under all the circumstances, show that there is a
substantial controversy, between parties having adverse legal
interests, of sufficient immediacy and reality to warrant the
issuance of a declaratory judgment."   *Md. Cas. Co.*, 312 U.S. at
273.

Courts in this district have held there is not any case or
controversy for purposes of declaratory judgment when, as here,
there is not any foreclosure pending.   *See, e.g., Magno v. U.S.
Bank N.A.*, No. 3:11-cv-00332-MO, 2013 WL 1636074, at *4 (D. Or.
Apr. 16, 2013)(Court held Plaintiff's declaratory-judgment claim
was not ripe because "no nonjudicial foreclosure has occurred,
and no nonjudicial foreclosure is pending."); *Clow v. Bank of*

*Am.*, Civil No. 10-3093-CL, 2011 WL 7153930, at *3 (D. Or.
Dec. 19, 2011)(Court granted the defendant's motion to dismiss
the plaintiffs' complaint for declaratory judgment on the ground
that there is not any actual case or controversy between the
parties because "no foreclosure proceeding against the property
has occurred, nonjudicial or otherwise.").

In addition, Plaintiffs do not allege any facts about MERS's
actions towards Plaintiffs.  The Complaint includes broad,
general allegations related to MERS's securitization of loans and
transfers of loans in the national economy, but none of the
allegations specifically involve Plaintiffs.

The Court concludes Plaintiffs have not pled facts
sufficient to establish that there is a substantial controversy,
between themselves and Defendants of sufficient immediacy and
reality to warrant declaratory judgment as to the issue of
foreclosure.  Accordingly, the Court grants Defendants' Motion to
Dismiss to the extent that Plaintiffs seek a declaration arising
from Defendants' alleged actions related to any foreclosure.

## II.  HAMP Application and Breach of Contract

### A.   HAMP Generally

On October 8, 2008, President Bush signed into law the
Emergency Economic Stabilization Act of 2008 (EESA), 12 U.S.C.
§ 5201 *et seq.*   EESA required the Secretary of the Treasury to
take certain measures in order to encourage and to facilitate

loan modifications. 12 U.S.C. § 5219.  EESA, however, did not create any private right of action against loan servicers for grievances relating to the EESA.  *See Ramirez v. Litton Loan Serv., LP,* No. CV-09-0319-PHX-GMS, 2009 WL 1750617, *1 (D. Ariz. June 22, 2009); *Barrey v. Ocwen Loan Serv., LLC*, No. CV-09-00573-PHX-GMS, 2009 WL 1940717, * 1 (D. Ariz. July 2, 2009). EESA authorized the Secretary of the Treasury, the Federal Housing Finance Agency (FHFA), the Federal National Mortgage Association (Fannie Mae), and the Federal Home Loan Mortgage Corporation (Freddie Mac) to create the Making Home Affordable Program, which consists of two components:  (1) the Home Affordable Refinance Program and (2) HAMP.  *Marks v. Bank of Am.,* No. 03:10-cv-08039-PHX-JAT, 2010 WL 2572988, at *5 (D. Ariz. June 22, 2010).  HAMP aims to financially assist three to four million homeowners who have defaulted on their mortgages or who are in imminent risk of default by reducing monthly payments to sustainable levels.  HAMP provides financial incentives to participating mortgage servicers to modify the terms of eligible loans.  On March 4, 2009, the Secretary of the Treasury issued guidelines under HAMP that required lenders to consider borrowers for loan modifications and to suspend foreclosure activities while a borrower is being evaluated for a modification.  *Id.*

HAMP requires mortgagees to collect, to retain, and to transmit mortgagor and property data to Freddie Mac in order to

ensure compliance with the program.  Freddie Mac is charged with conducting independent compliance assessments including evaluation of documented evidence to confirm adherence to HAMP requirements such as the evaluation of borrower eligibility.

The HAMP Guidelines and EESA do not expressly provide for a private right of action.  Rather, Congressional intent expressly indicates compliance authority is delegated solely to Freddie Mac.  By delegating compliance authority to Freddie Mac, Congress intended not to permit a private cause of action.  *See Reyes-- Gaona v. N.C. Growers Ass'n*, 250 F.3d 861, 865 (4th Cir. 2001) ("[T]he doctrine of *expressio unis est exclusio alterius* instructs that where a law expressly describes a particular situation to which it shall apply, what was omitted or excluded was intended to be omitted or excluded.").

**B.   Analysis**

A number of courts in the Ninth Circuit have held HAMP does not provide a private right of action against lenders. These courts have dismissed claims for breach of contract, claims involving representations made in HAMP documents, and claims relating to the policies and procedures of HAMP for lack of standing.  For example, in *Marks* the plaintiff submitted an application to the defendant bank for a loan modification under HAMP.  The defendant advised plaintiff that she qualified for loan assistance and modification of her loan.  The plaintiff

accepted the offer and requested the loan-modification paperwork.
The plaintiff offered to make a payment, and the defendant sought
to obtain the modified payment from the plaintiff but was unable
to process the payment.  The defendant advised the plaintiff to
send her payment with the signed loan-modification documents that
she would receive within two weeks.  The plaintiff waited for the
loan-modification documents for two weeks, at which point the
defendant informed the plaintiff that there could be more delay
in getting the documents to the plaintiff.  During a November
2009 telephone call between the plaintiff and the defendant, the
defendant told the plaintiff that the defendant had 45 days to
get the paperwork to her.  Two weeks after the telephone call,
the defendant advised the plaintiff that the foreclosure date had
been "pushed back" and that the paperwork delay seemed to be a
"bank error" that would be corrected.  In January 2010 the
defendant foreclosed the plaintiff's property and initiated a
Forcible Entry and Detainer action.  2010 WL 2572988, at *1.  The
plaintiff brought claims against the defendant for breach of
contract, quiet title, and for declaratory and injunctive relief.
The defendant moved to dismiss the plaintiff's claims on the
grounds that the plaintiff did not have "(1) standing to bring a
suit for breach of contract"; (2) there is not any "express,
private right of action to sue for a violation of the HAMP"; and
(3) there is not "an implied, private right of action to sue for

a violation of the HAMP." *Id.*, at *2. The court granted the defendant's motion to dismiss on the ground that the plaintiff lacked standing. The court also interpreted the plaintiff's "allegations regarding breach of contract [as] simply an attempt at enforcing a private right of action under HAMP." 2010 WL 2572988, at *5. The court held HAMP does not expressly permit a private right of action and concluded HAMP also does not contain an implied private right of action reasoning in pertinent part:

> "In the absence of clear evidence of congressional intent, [a court] may not usurp the legislative power by unilaterally creating a cause of action." *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1230–31 (9th Cir. 2008). Thus, to determine whether a federal statute was intended to create a private cause of action, the Supreme Court requires consideration of the following four factors: (1) whether the plaintiff is "one of the class for whose especial benefit the statute was enacted—that is, [whether] the statute create[s] a federal right in favor of the plaintiff"; (2) whether "there [is] any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; (3) whether the cause of action is "consistent with the underlying purposes of the legislative scheme"; and (4) whether "the cause of action [is] one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law." *Id.* (quoting *Cort v. Ash*, 422 U.S. 66, 78 (1975)).

> First, Plaintiff is not one of the class for whose "especial benefit" the HAMP was enacted. While Plaintiff may be a part of a class of homeowners whom EESA and HAMP are *intended to benefit*, the statute sweeps much more broadly than their "especial benefit." These statutes are addressed to large-scale economic phenomena affecting not only distressed homeowners, but also financial

institutions and homeowners at large.  The
statutes alter the mechanics of home foreclosure
in an effort to stem the downward spiral of home
prices as a national phenomenon.  The economic
stimulus effort attempts to promote the welfare of
foreclosure parties generally, but it does not
connote the power to delay foreclosures.

Second, legislative intent does not create a cause
of action under the HAMP.  The HAMP eases
restrictions on lenders and servicers and
encourages loan modifications.  12 U.S.C. § 5219.
Specifically, the HAMP was intended to effectuate
the goals of the EESA.  *Williams,* 2009 WL 3757370,
*2.  In addition, legislative history indicates
that the right to initiate a cause of action lies
with the Secretary via the Administrative
Procedure Act.  Allowing the Plaintiff to assert a
private cause of action would contravene clear
legislative intent.

Next, Plaintiff's proposed cause of action would
not further the underlying legislative scheme.  As
previously mentioned, Freddie Mac was designated
as the compliance officer.  As such, the
enforcement of the modification program is
contemplated only from the top down.  Furthermore,
the HAMP Guidelines already impose extensive data
reporting requirements on servicers.  *See*
Supplemental Directive 2009–01, at 13–14, 19–21.
Plaintiff's cause of action would not further the
legislative intent because the HAMP Guidelines
already designated a scheme to correct for any
mortgagee wrongdoing.

*Marks,* 2010 WL 2572988, at *6-7 (citations omitted)(emphasis in

original).

Similarly, in *Manabat v. Sierra Pacific Mortgage

Company*, the court concluded HAMP did not provide a private right

of action.  No. CV F 10–1018 LJO JLT, 2010 WL 2574161, at *11

(E.D. Cal. June 25, 2010).  The court explained Congress

demonstrated it "did not intend to create a private right of

16 - OPINION AND ORDER

action for violation of HAMP against lenders that received HAMP funds" when it specifically provided for private actions against the Secretary of the Treasury but not against others.  *Id.*, at * 11 (internal quotations omitted).  The court construed the plaintiff's claim that defendants Chase and MERS wrongfully failed to suspend their foreclosure action to allow the plaintiff to pursue alternatives to foreclosure as a claim for failure to modify the plaintiff's loan in violation of HAMP.  The court then dismissed the plaintiff's claim for lack of a private right of action.

In *Hoffman v. Bank of America* the court held "a borrower is not a third party beneficiary[ ]" to a HAMP contract between the lender and the Department of the Treasury.  No. C 10-2171 SI, 2010 WL 2635773, at *3 (N.D. Cal. June 30, 2010). The plaintiff in that case also alleged a breach of contract claim as "a stand alone right to enforce HAMP."  *Id.*, at *5.  The court noted:  "As previously discussed, lenders are not required to make loan modifications for borrowers that qualify under HAMP nor does the servicer's agreement confer an enforceable right on the borrower."  *Id.*

In *Vida v. OneWest Bank, F.S.B.*, the plaintiff applied for loan modification under HAMP after she missed several mortgage payments.  The plaintiff made reduced mortgage payments during the trial period of the HAMP application in January,

February, and March 2009.  In March 2009 the defendant advised
the plaintiff that she did not qualify for loan modification
under HAMP because she did not meet the income requirements.  On
May 6, 2009, a Notice of Default and Election to Sell was
recorded as to the plaintiff's property.  In June 2009 the
plaintiff advised the defendant of a change in her income and was
encouraged to reapply for loan modification.  The plaintiff
submitted a second loan-modification application.  In August 2009
the plaintiff was informed the foreclosure of her home was on
hold in light of the HAMP trial period.  Nonetheless, the
plaintiff's home was sold at a trustee's sale on September 9,
2009, as originally scheduled,.  On September 20, 2009, the
plaintiff contacted the defendant and was told the trial period
had been cancelled because the defendant had not received all of
the necessary documentation.  After investigation, however, the
defendant admitted the paperwork was not the issue and that the
modification had been cancelled because the plaintiff was not
income-eligible.  On October 23, 2009, the plaintiff received a
letter from the defendant informing her that she was not
qualified for modification under HAMP, but "they were willing to
work with [her] to determine if there [were] any further
alternatives to foreclosure." Civ. No. 10-987-AC, 2010 WL
5148473, at *1-2 (D. Or. Dec. 13, 2010).  The plaintiff filed an
action for breach of contract, fraud, and declaratory judgment

reinstating her mortgage.  The defendant moved to dismiss the
plaintiff's claim for breach of contract on the ground that the
plaintiff could not bring a private claim for breach of contract
under HAMP.  *Id.*, at *1.  The plaintiff asserted her breach-of-
contract claim was independent of HAMP and was based on common-
law contract principles.  The plaintiff attempted to distinguish
cases in which courts had concluded HAMP did not provide any
private right of action on the ground that the plaintiffs in
those cases asserted a right to loan modification arising out of
HAMP whereas she asserted the defendant breached an existing
agreement to modify her loan.  Thus, the plaintiff contended, her
interest was not based on an entitlement established by HAMP, but
rather on an agreement formed under the common-law principles of
offer and acceptance.  *Id.*, at *4.  The court noted other courts
have held claims disallowed under HAMP may proceed under
alternative, separate common-law theories.  *Id.* (citing *Aleem v.
Bank of Am.*, No. EDCV 09-01812-VAP (RZx), 2010 WL 532330 (C.D.
Cal. Feb. 9, 2010)).  The court, however, ultimately granted the
defendant's motion to dismiss:

> The court agrees with the district courts in this
> circuit that HAMP does not authorize a private
> right of action against participating lenders.
> That said, the court does not agree with
> Defendants' premise that they are wholly immunized
> for their conduct so long as the subject
> transaction is associated with HAMP.  Even so, the
> facts and allegations as pleaded in this case are
> premised chiefly on the terms and procedures set
> forth via HAMP and are not sufficiently

independent to state a separate state law cause of
action for breach of contract.

In setting out her allegations of breach of
contract, Vida relies primarily on representations
made in uniform HAMP documents.  Specifically,
Vida refers to the document governing the HAMP
trial period ("the Trial Period Plan" or "the
Plan") . . . [and] argues, to the extent that she
complied with the Plan and made no material
misrepresentations, she was entitled to
modification of her loan.  In other words, this
Plan acted as an offer which Vida subsequently
accepted by timely complying with all of its
requirements.  The Plan also states that "the
Lender will suspend any scheduled foreclosure
sale," so long as Vida complies with the Plan
obligations, though it also provides that "any
pending foreclosure action will not be dismissed
and may be immediately resumed from the point at
which it was suspended if this Plan terminates[.]"
*Id.* at 2.  Vida next cites a letter she received
from IndyMac Mortgage Services which confirms its
receipt of her "signed modification agreement[,]"
and references the upcoming loan modification
process.  (Complaint, Exhibit 5.)  As Vida points
out, this document does not refer to HAMP or the
Trial Period Plan.

The flaw in Vida's logic is that the alleged offer
to modify came about and was made wholly under the
rubric of HAMP, as were Vida's alleged actions in
acceptance of the offer, *i.e.,* submitting the
required documentation, and the alleged
consideration, *i.e.,* remitting reduced loan
payments.  Vida fails to state a cause of action
independent of HAMP, for which there is no private
right of action.

Vida also contends that, even if the claim arises
under HAMP, she was entitled to modification
because she met the eligibility requirements under
HAMP and accepted OneWest's offer to modify.

* * *

[However,] the Plan states explicitly that
modification is not guaranteed until the

> modification process is complete, and not at any
> intermediate point in the modification process.
> The Trial Period Plan is explicitly not an
> enforceable offer for loan modification.
>
>           \* \* \*
>
> The agreement also provides that if the lender
> does not furnish the borrower with "a fully
> executed copy of this Plan and the Modification
> Agreement[,]" the loan modification will not take
> place and the lender is entitled to pursue rights
> and remedies otherwise available under the loan.

*Id.*, at \*4-6.

The Court finds the reasoning of these cases to be persuasive and concludes HAMP does not contain any private right of action.  The Court, therefore, also concludes Plaintiffs may not bring a claim for violation of HAMP.  In addition, there is not any contract between a loan holder and a borrower until the loan modification is completed.  Finally, Plaintiffs' allegations center around the HAMP process and arise out of that process. Plaintiffs, therefore, have not stated a claim for breach of contract that is separate and apart from their HAMP process. Accordingly, the Court granted Defendants' Motion to Dismiss to the extent Plaintiffs assert a claim under HAMP and/or for breach of contract related to their loan modification process.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion (#25) to Dismiss and **DENIES** Plaintiffs' Motion (#2) to Quiet Title.

21 - OPINION AND ORDER

At oral argument the Court indicated it would allow Plaintiffs to seek *pro bono* counsel through the Court for the limited purposes of (1) assisting Plaintiffs in filing an amended complaint to cure the deficiencies set out herein and (2) conferring with Defendants' counsel to determine whether this matter is presently appropriate for mediation.  Plaintiff may file an amended complaint **within thirty (30) days** of appointment of *pro bono* counsel.

IT IS SO ORDERED.

DATED this 14th day of June, 2013.

_____
ANNA J. BROWN
United States District Judge

22 - OPINION AND ORDER